REGINA K. NOLAN, Plaintiff v. DERRICK LAMONT COOKE and WARREN COUNTY, A BODY POLITIC AND CORPORATE, NORTH CAROLINA ASSOCIATION OF COUNTY COMMISSIONERS—LIABILITY AND PROPERTY INSURANCE POOL FUND, AN UNINCORPORATED ASSOCIATION, DEFENDANTS

No. COA08-1371

(Filed 4 August 2009)

1. **Insurance— uninsured motorist—county insurance pool fund—North Carolina Motor Vehicle Safety and Responsibility Act**

   The trial court erred when it ordered the NC Association of County Commissioners Liability and Property Insurance Pool Fund (Fund) to provide $2,000,000 in coverage to plaintiff deputy sheriff, who was injured during a motor vehicle collision with an uninsured driver, after erroneously determining the policy was governed by North Carolina Motor Vehicle Safety and Responsibility Act (MVSR Act) because: (1) the MVSR Act's provisions do not apply to the policy between the county and the Fund since the Act itself specifically exempts county-owned vehicles and accidents involving county employees in the line of employment, and both parties agree the vehicle driven by plaintiff during the accident was owned by the county and that plaintiff was operating the vehicle in the course of her employment; (2) the county was not obligated to specifically select that its uninsured liability coverage would be less than $2,000,000 when the plain language of N.C.G.S. § 20-279.32 itself excluded its application to these facts; and (3) the coverage for plaintiff's accident was capped at $100,000 as specified in the policy.

2. **Workers' Compensation— set-off—county insurance policy**

   The trial court did not err as a matter of law by holding that the $197,193.75 that plaintiff deputy sheriff had received in workers' compensation could not be directly set off from the coverage limits in the county's policy because: (1) the language of the pertinent policy would not have left the amount of set-off to the trial

court's discretion, but rather would have required the full amount of damages awarded to plaintiff under workers' compensation to be set off; (2) the language in the policy calling for the entire amount of plaintiff's workers' compensation award to be set off from the policy limits was in direct conflict with the Court of Appeals's interpretation of N.C.G.S. § 97-10.2, which left that determination to the sound discretion of the trial court judge; and (3) *Curry*, —— N.C. App. ——, is controlling in this case, and thus any ambiguous language in the policy between the county and the Fund is construed in plaintiff's favor. Any amount paid by the county to plaintiff through the Workers' Compensation Act shall not be deducted from the coverage limits, but instead shall constitute a lien against any amount recovered in accordance with N.C.G.S. § 97-10.2.

Appeal by defendants from order entered 4 December 2006 by Judge Henry W. Hight, Jr., in Warren County Superior Court. Heard in the Court of Appeals 25 March 2009.

*Banzet, Thompason, & Styers, PLLC, by Mitchell G. Styers, for plaintiff.*

*Teague, Campbell, Dennis & Gorham, LLP, by George H. Pender, William A. Bulfer, and Courtney C. Britt, for defendants.*

ELMORE, Judge.

The facts of this case are undisputed. On 21 February 2002, Regina Nolan (plaintiff) was on patrol as a deputy sheriff, operating a car owned by Warren County and insured by the North Carolina Association of County Commissioners Liability and Property Insurance Pool Fund (the Fund) (collectively, defendants). Plaintiff was injured during a motor vehicle collision with Derrick Cooke's vehicle, which was uninsured.

Plaintiff filed a workers' compensation claim with the North Carolina Industrial Commission seeking compensation for her injuries. She has received $197,193.75 in compensation as a result of this claim.

With regard to motor vehicle insurance coverage, Warren County self-insures by participating with other North Carolina counties in a risk pool operated by the Fund. Warren County's policy with the Fund provides a $2,000,000.00 coverage limit for general vehicle liability

but only $100,000.00 in uninsured motorist coverage for county-owned vehicles. The policy includes the following relevant language:

5. Limit of Liability for Section III Uninsured/Underinsured Motorist Coverage.

a. Regardless of the number of Covered Auto's [*sic*], Covered Persons, claims made, or vehicles involved in the accident, the most the Fund will pay for all damages resulting from any one accident is the limit of Uninsured/Underinsured Motorist Coverage of this Section III shown in the Declarations Page.

b. Any amount payable under Section III, E. Uninsured/Underinsured Motorist Coverage shall be reduced by:

(1) all sums paid or payable under any workers' compensation, disability benefits, or similar law exclusive of non-occupational disability benefits; and

(2) all sums paid by or for anyone who is legally responsible, including all sums paid under the Contract's liability coverage; and

(3) all sums paid or payable under any policy of property insurance.

c. Any amount paid under this coverage will reduce any amount a Participant may be paid under the Contract's liability coverage.

Plaintiff brought an action seeking determination of the amount of coverage of the vehicle policy maintained by Warren County. The trial court held that the North Carolina Motor Vehicle Safety and Responsibility Act (the MVSR Act) required the Fund to provide $2,000,000.00 in general liability coverage, despite the policy limit of $100,000.00 for uninsured motorists. The trial court also held that the $197,193.75 in workers' compensation that plaintiff had received could not be directly set off from the coverage amount. Rather, the trial court held, the workers' compensation damages constituted a lien, leaving the amount set off from Warren County's coverage to be determined by the trial court.

Defendants appeal those two orders of the trial court. For the reasons stated below, we reverse in part and affirm in part.

NOLAN v. COOKE

[198 N.C. App. 667 (2009)]

## ARGUMENTS

### I.

[1] Defendants argue that the trial court erred when it ordered the Fund to provide $2,000,000.00 in coverage after determining that the policy was governed by the MVSR Act. We agree.

We review a trial court's construction of statutory provisions *de novo*. *Ramey v. Easley*, 178 N.C. App. 197, 199, 632 S.E.2d 178, 180 (2006) (citations omitted).

By its 6 December 2006 order, the trial court concluded that N.C. Gen. Stat. § 20-279.32 exempted county-owned vehicles from the MVSR Act. Despite this exemption, the trial court further concluded that, because Warren County had purchased insurance for its vehicles, the insurance policy itself was subject to the MVSR Act and "should be held to the same standards and laws as other automobile policies written in this state[.]" Under the trial court's reasoning, N.C. Gen. Stat. section 20-279.21 of the MVSR Act would have required Warren County to specifically select that it wanted the coverage for uninsured motorist claims to be different than its general motor vehicle liability coverage limit, which was $2,000,000.00. However, "Warren County did not specifically select a different uninsured/ underinsured motorist coverage limit[.]" Since the trial court determined that the policy was subject to the MVSR Act, the trial court held that "the coverage limits for uninsured motorists [under Warren County's policy] . . . is [*sic*] the same as those selected for liability coverage." As such, the trial court ruled that the Fund was required to provide $2,000,000.00, rather than $100,000.00, in coverage for plaintiff's accident.

The question on appeal, therefore, is whether the vehicle insurance policy between Warren County and the Fund is actually subject to the MVSR Act. We reverse the trial court on this point and hold that the policy is not subject to the MVSR Act and that the uninsured motorist coverage limit applies to plaintiff's claim.

The MVSR Act's provisions do not apply to the policy between Warren County and the Fund because the Act itself specifically exempts county-owned vehicles and accidents involving county employees in the line of employment:

This Article does not apply to any motor vehicle owned by a county or municipality of the State of North Carolina, nor does

it apply to the operator of a vehicle owned by a county or municipality of the State of North Carolina who becomes involved in an accident while operating such vehicle in the course of the operator's employment as an employee or officer of the county or municipality.

N.C. Gen. Stat. § 20-279.32 (2007). Both parties agree that the vehicle driven by plaintiff during the accident was owned by Warren County and that plaintiff was operating the vehicle in the course of her employment. As such, the plain language of the statute itself excludes its application to these facts, which means that Warren County was not obligated to specifically select that its uninsured liability coverage would be less than $2,000,000.00.

Additionally, this precise scenario has been addressed by our Supreme Court. In *Watson v. American National Fire Insurance Company*, the plaintiff's vehicles were excluded from the MVSR Act by N.C. Gen. Stat. § 20-279.32, but the plaintiff argued that his insurance policy itself was still subject to N.C. Gen. Stat. § 20-279.21(b)(4)'s requirement that he specifically select uninsured and underinsured motorist coverage limits. 106 N.C. App. 681, 685-86, 417 S.E.2d 814, 817 (1992). When the case reached our Supreme Court, the Court held that "[b]y its plain words N.C.G.S. § 20-279.32 says that N.C.G.S. § 20-279.21(b)(4) does not apply in this case. The plaintiff has only such coverage as is provided in the policy." *Watson v. American National Fire Ins. Co.*, 333 N.C. 340, 340, 425 S.E.2d 696, 697 (1993). As in *Watson*, the vehicle in the present case is specifically excluded from the MVSR Act's provisions, and, therefore, Warren County was not obligated to specifically select its uninsured motorist coverage per N.C. Gen. Stat. § 20-279.21(b)(4). Accordingly, the coverage for plaintiff's accident is capped at $100,000.00 as specified in the policy. Plaintiff contends that the "court's rationale [in *Watson*] implies that the vehicles . . . were exempt from the Motor Vehicle Safety and Responsibility Act because there are [additional Federal Interstate Commerce] regulations governing those policies." However, our Supreme Court specifically stated that "[i]t is not the [Federal Interstate Commerce] regulations that preempt the plaintiff from underinsured motorist coverage. It is the statutes of this state which do not provide for underinsured motorist coverage in this case." *Watson*, 333 N.C. at 340, 425 S.E.2d at 697-98.

For the reasons stated above, we hold that the trial court erred by concluding as a matter of law that the policy between Warren County and the Fund was subject to the MVSR Act. Therefore, Warren County

was not required to specifically select that its uninsured motorist coverage would be less than $2,000,000.00, and the maximum coverage for plaintiff's accident is capped at $100,000.00, per the language of the policy with the Fund.

## II.

**[2]** Defendants next argue that the trial court erred as a matter of law by holding that the $197,193.75 that plaintiff had received in workers' compensation could not be directly set off from the coverage limits in Warren County's policy. We disagree.

The policy between Warren County and the Fund provides that any amount paid by workers' compensation would be directly set off from the policy's coverage limit, which, as determined above, is $100,000.00 in this particular instance. "[T]he purpose of set-off provisions is to prevent double recoveries" that would allow a plaintiff to recover damages from both a third party under motor vehicle insurance and from her employer's workers' compensation fund. *N.C. Counties Liability & Prop. Joint Risk Mgmt. Agency v. Curry*, 191 N.C. App. 217, 224, 662 S.E.2d 678, 683 (2008) (citation omitted). In the present case, the trial court held that the set-off provision was in direct conflict with N.C. Gen. Stat. § 97-10.2. This statute allows the trial court to award a lien to an employer for any damages recovered by an injured employee from a third party, so that the employer does not have to pay the entire cost of its employee's injury while the employee receives compensation from the third party. *See Allen v. Rupard*, 100 N.C. App. 490, 493-94, 397 S.E.2d 330, 332 (1990). However, the amount of this lien is in the discretion of the trial court, which could "allow[] plaintiff a double recovery at the expense of the employer or carrier[.]" *Id.* at 494, 397 S.E.2d at 332 (quotations and citation omitted). The language of the policy in the present case would not have left the amount of set-off to the trial court's discretion, but rather would have required the full amount of the damages awarded to plaintiff under workers' compensation to be set off.

The policy between Warren County and the Fund specifically states that "[i]f any of the provisions of this Contract conflict with the laws or statutes of any jurisdiction in which this contract applies, this Contract is amended to conform to such laws or statutes." The language in the policy calling for the entire amount of plaintiff's worker compensation award to be set off from the policy limits is in direct conflict with this Court's interpretation of N.C. Gen. Stat. § 97-10.2, which leaves that determination to the sound discretion of the trial

court judge. *Id.*; *Pollard v. Smith*, 90 N.C. App. 585, 588, 369 S.E.2d 84, 86 (1988), *rev'd on other grounds*, 324 N.C. 424, 378 S.E.2d 771 (1989). As such, the policy itself dictates that its language addressing set-offs be amended in accordance with the holdings of *Allen* and *Pollard*, leaving this matter to the discretion of the trial judge.

Additionally, this Court's recent decision in *Curry* concerned a policy between the Fund and another North Carolina County that contained precisely the same language as the policy in the present case. 191 N.C. App. at 218, 662 S.E.2d at 679. In *Curry*, this Court held:

> [T]he structure and language of the policy support [the plaintiff's] interpretation of the set-off provisions as requiring a deduction from the total damages rather than a deduction from the policy limits. Even though [the Fund's] view is also reasonable, the existence of two reasonable constructions means that the policy . . . is ambiguous. Under well-established principles, this ambiguity requires that we accept the construction that favors the insured.

*Id.* at 224, 662 S.E.2d at 682-83 (citation omitted). That is, the policy was ambiguous as to precisely how the set-off would be calculated, and, therefore, the language was construed against the Fund.

*Curry* involved a policy with the exact same language as the present case, and its rationale was based upon a survey of how other states had handled similar policy language. We do not agree with defendants' argument that *Curry* should be overruled as "clearly erroneous." As defendants themselves concede, our Supreme Court has held that "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Our Supreme Court chose not to review this Court's decision in *Curry*. *N.C. Counties Liab. & Prop. Joint Risk Mgmt. Agency v. Curry*, 362 N.C. 509, 668 S.E.2d 29 (2008). As such, *Curry* is controlling here, and the language in the policy between Warren County and the Fund is construed in plaintiff's favor.

For the reasons stated above, we affirm the trial court's order and hold that any amount paid by Warren County to plaintiff through the Workers' Compensation Act shall not be deducted from the coverage

limits, but instead shall constitute a lien against any amount recovered in accordance with N.C. Gen. Stat. § 97-10.2.

Reversed in part, affirmed in part.

Judges BRYANT and STEELMAN concur.